In the Matter of the GUARDIANSHIP OF Josephine A. HICKMAN.

Leo E. Hickman, Jr., Appellant–Respondent,

v.

Joseph D. Hickman, Appellée–Petitioner.

No. 53A01–0211–CV–446.

Court of Appeals of Indiana.

March 26, 2004.

⚿148.1

Curtis E. Shirley, John R. Schaibley, III, Robert K. Stanley, Kathy L. Osborn, Baker & Daniels, Indianapolis, IN, Eric Allan Koch, Bloomington, IN, Attorneys for Appellant.

Edward O. Delaney, Peter J. Rusthoven, Bart A. Karwath, Mark J. Crandley, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Leo E. Hickman, Jr., ("Leo") appeals the trial court's grant of a petition for guardianship over the person and estate of Josephine A. Hickman ("Josephine") filed by Joseph D. Hickman ("Joseph"). Leo raises three issues, which we restate as:

I. Whether the trial court abused its discretion by denying Leo's motion for change of judge;

II. Whether the trial court erred by denying Leo's request for a jury trial in the guardianship proceeding; and

III. Whether the trial court abused its discretion by admitting certain testimony of the guardian ad litem.

We affirm.

The relevant facts follow. This is the second in a series of three appeals from a contentious family dispute over the guardianship of Josephine. *See In re Hickman,* No. 53A01–0208–CV–328, 792 N.E.2d 106, mem. op. (Ind.Ct.App. July 17, 2003), and *Hickman v. Irwin Union Bank,* No. 53A01–0306–CV–220 (appeal pending).[1] In February 1988, Josephine fell and hit her head on a concrete driveway, resulting in a severe head injury. Although she eventually regained consciousness, she never regained her full mental capacity. Josephine is now in her eighties and resides in a comprehensive care unit of the Meadowood retirement community in Bloomington, Indiana. Josephine frequently fails to recognize the Meadowood staff and her physician and does not always recognize her children. She is unable to perform basic daily hygiene tasks or take her medicine without assistance. Because Josephine has violent episodes in which she throws objects or attempts to hit people, she is not allowed to eat her meals with the other residents and is restricted from participating in social activities with the other residents.

Prior to her accident, Josephine ran Hoosier Outdoor Advertising Corporation ("Hoosier Outdoor"), which is a family-owned corporation located in Bloomington, Indiana. Josephine's seven children, Leo, Joseph, Ruth Hickman, Jamie Hickman Thompson, Paul Hickman, Richard Hickman, and John Hickman, were shareholders, as well as officers or directors, in Hoosier Outdoor. Leo, Jamie, and Joseph each worked at Hoosier Outdoor, and Leo was vice-president.

On July 19, 2001, Leo visited Josephine in her nursing home and obtained her signature on documents purporting to transfer enough shares of voting stock to give Leo control of Hoosier Outdoor. On that same day, Leo removed his siblings as officers and directors of Hoosier Outdoor and replaced them with his wife and daughter. In March 2002, Leo also terminated Joseph's and Jamie's employment at Hoosier Outdoor.

On August 1, 2001, Joseph filed a petition for appointment of a temporary guardian over Josephine's person and estate, and Leo objected to the petition. The trial court appointed attorney Susan H. Nelson as Josephine's guardian ad litem. On January 22, 2002, Nelson filed a written report with the trial court recommending that a guardian be appointed for Josephine's person and estate. Nelson recommended that Joseph be appointed guardian of Josephine's person and a bank or other institution having a trust department be appointed guardian of Josephine's estate. On March 19, 2002, Joseph filed a petition for appointment of a permanent guardian of Josephine's person and estate.

---

1. The first appeal was an interlocutory appeal of a preliminary injunction against Leo that required Leo to maintain health insurance coverage for Josephine, his siblings, and their dependents. We held that the trial court did not err by issuing the preliminary injunction enjoining Leo from terminating the health insurance benefits. *See Hickman,* 53A01–0208–CV–328, 792 N.E.2d 106, mem. op. at 23. The third appeal relates to post-trial orders granting Irwin Union Bank's motion to rescind stock gifts and denying Leo's motion for automatic change of judge.

The petition listed Leo as one of the persons most closely related to Josephine, and notice of the petition was sent to Leo through his counsel. On March 21, 2002, Leo filed a written response to Joseph's petition and requested "trial by Jury on all issues and matters raised in the guardianship petition and counterclaim." Appellant's Appendix at 139.

On June 25, 2002, Joseph filed "Verified Motion for Temporary Restraining Order and Injunction Preventing Pending Cancellation of Health Insurance." *Id.* at 146. On the same day, the trial court granted the temporary restraining order without notice to Leo or his attorneys and set a hearing date for Joseph's request for a preliminary injunction. The trial court also entered an order granting all interested parties forty-eight hours in which to respond to the request. Soon thereafter, Leo filed a motion for change of judge, alleging in part that the order granting the temporary restraining order was an ex parte communication and that the order violated Ind. Trial Rule 65. The trial court denied Leo's motion for change of judge and granted Joseph's motion for a preliminary injunction.[2]

The trial court set Joseph's petition for permanent guardianship for trial with an advisory jury. Leo objected to the use of an advisory jury and to the trial court's denial of his jury demand. At the beginning of the trial, the trial court denied Leo's objection on the record and later issued the following written order:

> [Leo] is not a party to this action. The only parties in a guardianship case are the petitioner and the person who is named as a person who is in need of a guardian due to his or her incapacitation. The right to a trial by jury is

available to the alleged incapacitated person. It is not available to the petitioner nor is it available to a person who is permitted by the court to participate in the proceedings.

> [Leo] became involved in this cause without requesting prior permission from the court. The statute is clear that persons other than the petitioner and the alleged incapacitated person must request participation, and persons who are permitted to participate can do so only as authorized by the court.

> The right to a trial by jury in a guardianship proceeding is found in the guardianship statute and not in the Constitutions of the United States or the State of Indiana. Guardianship proceedings are equitable in nature.

> If there is a request for a jury trial by the alleged incapacitated person, the jury can only decide whether the person is incapacitated and whether the appointment of a guardian is necessary to assist the person in the care of the person's physical person and/or his property.

> [Leo's] insistence that the jury should determine who should be the guardian is without merit. IC 29–3–5–3(a) clearly states that the court shall appoint the guardian. There is no language in the guardianship statutes that make any reference to the jury deciding who should be the guardian of the physical person or of the property of an incapacitated person. IC 29–3–5–4 provides a list of persons with priority to serve as a guardian, and the court is required to select a guardian from that list.

> At the beginning of the jury trial that began on September 3, 2002, the court

---

2. The grant of the preliminary injunction was the subject of the first appeal in this guardianship proceeding. *See In re Hickman,* No. 53A01–0208–CV–328, 792 N.E.2d 106, mem. op. (Ind.Ct.App. July 17, 2003).

denied the instant motion on the record. Despite the court's ruling, [Leo's] counsel continued to object to what he terms "the court's unilateral decision" at various times throughout the course of the four-day jury trial.

It is clear that [Leo] had no right to a jury trial in this cause. The court stated at the pretrial conference on July 24, 2002 that the jury would be an advisory jury. [Leo] and his counsel were present at the pretrial conference. Trial Rule 39(B) permits the court to have an advisory jury when the request for a jury is made by a party with no right to a jury.

*Id.* at 38–39.

On the first day of the trial, Leo filed a motion in limine regarding "the guardian ad litem's report and recommendation." *Id.* at 259. Leo argued that Nelson had "the ability to introduce admissible evidence, call and cross examine witnesses, but [did] not have the ability to testify on matters not involving admissible, personal knowledge. Her report is based on all levels of hearsay and involves conclusions on ultimate issues in this case that are reserved for the jury." *Id.* at 259–260. At the end of the trial, Nelson began to testify about her background. *Id.* at 298–299. Leo pointed out that he had "filed a Motion in Limine concerning her taking the stand and testifying in this case and presenting the Guardian Ad Litem's report." *Id.* at 299. Leo objected "to her taking the stand and testifying in this matter on anything and [reasserted his] Motion in Limine...." *Id.* The trial court denied Leo's objection, and Nelson then continued testifying regarding her background and her investigation of the matter. Nelson concluded as follows:

It is my recommendation that a guardian be appointed for both [Josephine's] person, I believe that there are

healthcare decisions as this lady, this grand lady of seven (sic) continues to age, that there may need to be some healthcare decisions made. I think it is one thing to consent to medical treatment and it's another thing to meaningfully participate in a course of medical treatment[,] and I don't think she can do this at this point. I also believe that a guardian needs to be appointed for her estate. Mr. Delaney very kindly erased the estate plan there, but I think as Mr. Olson testified there are some decisions that need to be made in her best interests, whatever happens with the corporation and those need to be done now, and I don't believe that she can meaningfully participate in estate planning or the management of her funds.

*Id.* at 302. After Nelson had completed her testimony, Leo moved to strike the testimony "on the basis of all of the reasons mentioned in the Motion in Limine...." *Id.* at 303. Leo also argued that "the Guardian Ad Litem has made a purported expert opinion to this jury as to how they should conclude and how they should find and what they should rule on in this case and that is totally improper for any witness unless they qualify under the rules under some ... other area...." *Id.* at 304. The trial court denied Leo's request to strike the testimony.

During deliberations, the advisory jury sent questions to the trial court regarding the guardian ad litem's role in the case and her testimony. *Id.* at 315, 324, 330. Over Leo's objections, the trial court reread the introduction of Nelson that it had made at the beginning of the trial: "Ms. Susan Nelson has been appointed by the Court as Josephine Hickman's Guardian Ad Litem and Ms. Nelson will be representing the best interests of Josephine A. Hickman." *Id.* at 328–329. The trial court also re-

played a recording of Nelson's testimony for the jury.

The advisory jury returned verdicts as follows:

> We, the jury, deny the Petition and find that whether or not Josephine A. Hickman is an incapacitated person, the appointment of a guardian is not necessary as a means of providing care and supervision of her physical person.

> \* \* \* \* \*

> We, the jury, grant the Petition and find that Josephine A. Hickman is an incapacitated person and that the appointment of a guardian is necessary as a means of providing care and supervision of her property.

*Id.* at 34, 36. The trial court accepted the advisory jury's verdict as to the appointment of a guardian of Josephine's property but rejected the advisory jury's verdict as to the appointment of a guardian of Josephine's person. The trial court entered findings of fact and conclusions thereon granting Joseph's petition for a permanent guardian over Josephine's person. The trial court then appointed Joseph as the guardian of Josephine's person and Irwin Union Bank as guardian of Josephine's estate. On appeal, Leo argues that the following three procedural errors occurred during the guardianship proceeding.

## I.

■■■■ The first issue is whether the trial court abused its discretion by denying Leo's motion for change of judge. A ruling upon a motion for a change of judge rests within the sound discretion of the trial judge and will be reversed only upon a showing of abuse of that discretion. *Carter v. Knox County Office of Family & Children,* 761 N.E.2d 431, 434 (Ind.Ct.App. 2001). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan,* 728 N.E.2d 855, 859 (Ind.2000).

■■ Leo argues that improper ex parte communication occurred between the trial court and Joseph's counsel and that the trial court improperly granted a temporary restraining order against him. As a result, Leo filed a motion for a change of judge, which was denied.[3] Leo argues that Canon 3 of the Indiana Code of Judicial Conduct and our supreme court's decision in *In re Anonymous,* 729 N.E.2d 566 (Ind.2000), mandated that the trial court grant the motion for change of judge and that he is entitled to a new trial before a special judge. In *Anonymous,* our supreme court considered the grant of a temporary restraining order where Trial Rule 65(B) was not followed and an ex parte communication occurred between the petitioner and the judge. *Id.* at 567–569. Our supreme court found that "[a] judge who fails to comply fully with the provisions of T.R. 65(B) engages in ex parte communication proscribed by the Code of Judicial Conduct." *Id.* at 568–569. However, we note that "because the Indiana Supreme Court has exclusive jurisdiction over alleged violations of the Code of Judi-

---

3. Leo requested that the trial court certify this issue for interlocutory appeal, but the trial court denied the motion. Further, on appeal from the grant of the preliminary injunction, Leo requested that we stay the trial and hold that the trial court was impartial and biased. We held that the "only issue ripe for appellate review is the granting of the Appellee's peti-

tion for preliminary injunction. The other interlocutory orders the Appellant seeks to appeal are not appealable by right and have not been certified under Appellate Rule 14(B) or Trial Rule 54(B)." *In re Hickman,* No. 53A01–0208–CV–328, Order of August 29, 2002.

cial Conduct, we cannot determine whether a trial court judge violated a Judicial Canon." *Carter,* 761 N.E.2d at 434. Thus, the trial court's actions in relation to the Code of Judicial Conduct is not a proper consideration for this court. *Id.* at 435.

■ Rather, "[u]pon review of a trial judge's decision not to disqualify himself, we presume that the trial judge is unbiased." *Leisure v. Leisure,* 589 N.E.2d 1163, 1168 (Ind.Ct.App.1992), *adopted and incorporated by reference in pertinent part by Leisure v. Leisure,* 605 N.E.2d 755, 759 (Ind.1993). In order to overcome that presumption, the appellant must demonstrate actual personal bias. *Id.* Unless presented with evidence to the contrary, we assume that the judge would have complied with the obligation to disqualify himself had there been any reasonable question concerning his impartiality. *Id.; see also Smith v. State,* 770 N.E.2d 818, 823 (Ind.2002) ("Merely asserting bias and prejudice does not make it so. The law presumes that a judge is unbiased and unprejudiced."). Such bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him. *Carter,* 761 N.E.2d at 435. Adverse rulings and findings by the trial judge do not constitute bias per se. *Id.* "Instead, prejudice must be shown by the judge's trial conduct; it cannot be inferred from his subjective views." *Id.*

Leo argues that he "has certainly shown the actual personal bias of the trial judge by showing that Joseph and she had improper ex parte communications and failed to comply with Trial Rule 65(B)." Appellant's Reply Brief at 9 n. 17. Further, Leo argues that after the ex parte meeting, "with minor changes the record shows [the trial court] signed virtually every order and judgment Joseph tendered." *Id.* at 10.

As noted above, we presume that the trial court is unbiased. Leo must demonstrate more than that the trial court entered rulings adverse to him because adverse rulings do not constitute bias per se. As for the alleged ex parte communication, the communication occurred in relation to an incidental issue in the case, i.e., a temporary restraining order preventing Leo from canceling the health insurance of his siblings, not a determination of whether Josephine is in need of a guardian, which was the ultimate issue. Leo did not demonstrate any prejudice or actual personal bias resulting from this communication. *Cf. Harrison v. Anderson,* 300 F.Supp.2d 690 (S.D.Ind.2004) (holding that the defendant demonstrated actual bias where the murder victim had made allegations concerning the trial court prior to her death, the trial court had a personal interest in protecting his name and the county's judiciary, and the trial court made rulings calculated to remove any mention of himself or implication of his alleged wrongdoing from the defendant's defense). Accordingly, the trial court did not abuse its discretion by denying Leo's motion for change of judge. *See, e.g., Leisure,* 589 N.E.2d at 1169 (holding that the trial court did not abuse its discretion by denying the appellant's motion for change of judge where the appellant failed to demonstrate actual bias).

## II.

The next issue is whether the trial court erred by denying Leo's request for a jury trial in the guardianship proceeding. Leo argues that he was entitled to request a jury trial under the guardianship statutes and that he made a timely request for a jury trial. Consequently, Leo contends that the trial court erred by denying his

request for a jury trial and utilizing an advisory jury instead. Joseph argues that Leo did not have a right to a jury trial under the guardianship statutes, and, even if he did have such a right, any error was harmless.

■■■ A resolution of this issue requires us to interpret the guardianship statutes. The interpretation of a statute is a question of law, which is reserved for the courts. *Skrzypczak v. State Farm Mut. Auto. Ins. Co.,* 668 N.E.2d 291, 295 (Ind. Ct.App.1996). If a statute is unambiguous, i.e., susceptible to only one meaning, we must give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to accomplish that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* In ascertaining the legislature's intent, we assume that "the legislature did not enact a useless provision" such that "[w]here statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute." *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 948 (Ind.2001) (quoting *Robinson v. Wroblewski,* 704 N.E.2d 467, 474–475 (Ind.1998)). We must also "keep in mind the objects and purposes of the law as well as the effect and repercussions of such a construction." *Ind. State Teachers Ass'n v. Bd. of School Comm'rs of City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct. App.1998).

■■■ Ind.Code § 29–3 governs guardianships proceedings. The section at issue here is Ind.Code § 29–3–5–1 (1998), which provides, in part, that:

A person alleged to be an incapacitated person may present evidence and cross-examine witnesses at the hearing. *The issues raised by the petition and any response to the petition shall be determined by a jury if a jury is requested no later than seventy-two (72) hours prior to the original date and time set for the hearing on the petition. However, in no event may a request for a jury trial be made after thirty (30) days have passed following the service of notice of a petition.*

Ind.Code § 29–3–5–1(e) (emphasis added). This section of the guardianship statutes does not specify who is permitted to request a jury trial. We conclude that this language is susceptible to more than one interpretation, and, thus, we must attempt to ascertain the legislature's intent. In doing so, we must read the guardianship statutes as a whole. *Citizens Action Coalition of Ind., Inc. v. Ind. Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998).

In general, the guardianship statutes provide that "[a]ny person may file a petition for the appointment of a person to serve as guardian for an incapacitated person." I.C. § 29–3–5–1(a). The petition must contain certain information, including:

(1)  the name, age, residence, and post office address of the alleged incapacitated person or minor for whom the guardian is sought to be appointed;

(2)  the nature of the incapacity;

(3)  the approximate value and description of the property of the incapacitated person or minor, including any compensation, pension, insurance, or allowance to which the incapacitated person or minor may be entitled;

(4) if a limited guardianship is sought, the particular limitations requested;

(5) whether a guardian has been appointed or is acting for the incapacitated person or minor in any state;

(6) the residence and post office address of the proposed guardian and the proposed guardian's relationship to the alleged incapacitated person;

(7) the names and addresses, as far as known or as can reasonably be ascertained, of *the persons most closely related by blood* or marriage to the person for whom the guardian is sought to be appointed;

(8) the name and address of the person or institution having the care and custody of the person for whom the guardian is sought to be appointed;

(9) the names and addresses of any other incapacitated persons or minors for whom the proposed guardian is acting if the proposed guardian is an individual;

(10) the reasons the appointment of a guardian is sought and the interest of the petitioner in the appointment;

(11) the name and business address of the attorney who is to represent the guardian.

I.C. § 29–3–5–1 (emphasis added). In the case of an alleged incapacitated person, when the guardianship petition is filed, notice of the petition and the hearing on the petition must be given to certain persons, including "[t]he alleged incapacitated person, the alleged incapacitated person's spouse, and the alleged incapacitated person's adult children, or if none, the alleged incapacitated person's parents." Ind.Code § 29–3–6–1(a)(4)(A) (1998). As Josephine's adult child and a person "most closely related by blood" to Josephine, Leo was entitled to notice of the petition and was required to be listed on the petition.

Another section of the guardianship statutes is essential to our interpretation of whether Leo has the right to request a jury trial. Following Ind.Code § 29–3–5–1(e), which discusses the right to request a jury trial, the section also provides that:

Any person may apply for permission to participate in the proceeding, and the court may grant the request with or without hearing upon determining that the best interest of the alleged incapacitated person or minor will be served by permitting the applicant's participation. The court may attach appropriate conditions to the permission to participate.

I.C. § 29–3–5–1(f).

Leo argues that a reading of the guardianship statutes as a whole indicates an intent that he, as an adult child of Josephine, should be permitted to request a jury trial. Leo points out that he was entitled to notice of the petition as an adult child of the alleged incapacitated person and he was listed in the petition. Leo also argues that when interpreting the guardianship statutes to determine who may request a jury trial in a guardianship proceeding, we should liberally construe the statutes to allow the presentation of a defense on behalf of the alleged incapacitated person. According to Leo, "[t]he policies embodied in the guardianship laws are far better promoted by permitting any interested person who properly appears in the trial court to respond to the petition and request a jury determination of the issues raised by the petition and response." Appellant's Brief at 28.

Joseph contends that the guardianship statutes indicate a desire to "provide the incapacitated person with various procedural protections, including a right to request a jury." Appellee's Brief at 9. Joseph argues that Leo's involvement with

the guardianship proceeding stems solely from Ind.Code § 29–3–5–1(f), under which a trial court may grant a person leave to participate in the proceeding. Moreover, Joseph highlights the fact that the guardianship statutes do not even discuss such participants until after the subsection addressing the right to a jury. According to Joseph, the guardianship statutes and the legislative history indicate an intent to allow only the alleged incapacitated person to request a jury trial.

We first address Leo's contention that he was entitled to request a jury because he was listed on the petition and received notice of the petition. Ind.Code § 29–3–5–1(a) requires that several persons be listed on the petition, including: (1) "persons most closely related by blood or marriage;" (2) "the person or institution having the care and custody or the person for whom the guardian is sought;" (3) "any other incapacitated person or minors for whom the proposed guardian is acting if the proposed guardian is an individual;" and (4) "the attorney who is to represent the guardian." Nothing in the guardianship statutes indicates that simply being listed on the petition gives a person rights in the guardianship proceeding, such as the right to request a jury trial. In fact, some persons listed on the petition, such as other incapacitated persons or minors for whom the proposed guardian is acting, are not even entitled to notice of the petition. Consequently, simply being listed on the petition does not give a person rights in the guardianship.

Ind.Code § 29–3–6–1 requires notice of the petition and hearing to be given to several persons, including: (1) "the alleged incapacitated person's spouse, and the alleged incapacitated person's adult children, or if none, the alleged incapacitated person's parents;" (2) "[a]ny person who is serving as a guardian for, or who has the care and custody of, the alleged incapacitated person;" or (3) "at least one (1) of the persons most closely related by blood or marriage to the alleged incapacitated person." As with the persons listed on the petition, nothing in the guardianship statutes indicates that receiving notice of the petition and the hearing gives a person rights in the guardianship proceeding. Such notice is simply to provide other immediate family members with notification of the proposed guardianship and an opportunity to request leave to participate in the guardianship under Ind.Code § 29–3–5–1(f). Ind.Code § 29–3–5–1(f) does not differentiate between persons listed on the petition or persons receiving notice of the petition and other interested persons in requiring that such persons request leave of the trial court to participate in the proceedings.

Leo argues that it "would be incongruous, at the very least, to require that notice of the petition be provided to the alleged incapacitated person's spouse and adult children, but to deny them the opportunity to appear and respond to the petition." Appellant's Brief at 25. However, such persons are not denied the opportunity to participate in the action. Rather, they are simply required to request the trial court's permission to do so, and the trial court considers the alleged incapacitated person's best interests in determining whether the person should be granted permission to participate. I.C. § 29–3–5–1(f).

We conclude that a reading of the guardianship statutes as a whole indicates that, although the guardianship statutes require that persons such as Leo be listed within the petition and receive notice of the petition and hearing on the petition, the guardianship statutes do not confer specific rights or responsibilities upon such persons. Rather, such persons must re-

quest permission from the trial court to participate. Ind.Code § 29–3–5–1(f) provides that the trial court "may attach appropriate conditions to the permission to participate." Nothing in the guardianship statutes indicates that the trial court must grant such persons the right to a jury trial if requested.

This conclusion is strengthened by the legislative history. Our current guardianship statutes went into effect on July 1, 1989.[4] *See* Pub.L. No. 169–1988, § 1, amended by Pub.L. No. 33–1989, § 68. In considering the adoption of new guardianship statutes, the General Assembly created the Probate Code Study Commission to study and recommend changes in the probate code, including the guardianship statutes. *See* Ind.Code § 2–5–16 (1988). The Commission considered "[w]hether the right to a jury trial in a guardianship proceeding should be retained" and determined that "[s]ince the right to a jury trial in guardianship proceedings currently exists in the Indiana Code, the right to a jury trial in guardianship proceedings should be retained in the new guardianship code." *Final Report of the Probate Code Study Commission,* Nov. 1988; Appellee's Addendum at 8–9.

The right to a jury trial that the Commission determined should be retained was set forth in the following provision of the prior guardianship statutes:

Upon the filing of the petition ... in the case of any person alleged to be incompetent for any reason other than his minority, and after notice ..., such court shall cause said person to be produced in court and if said petition is not already at issue by answer of such person, shall cause an issue to be made by the clerk of such court denying the facts set forth in such statement; which issue shall be tried as the issues in civil actions are tried, by the court, or by a jury to be impaneled under the direction of said court, if a jury is requested.

Ind.Code § 29–1–18–19 (repealed by Pub.L. No. 169–1988, § 8 (eff. July 1, 1989)). This section indicated an intent that the alleged incapacitated person could respond to the petition or the clerk of the court could enter a general denial and the issues raised by the petition and such response could be tried by a jury if requested. The prior guardianship statutes also required the petition to list the "person most closely related by blood or marriage to the incompetent" but only required that notice of the petition be given to the alleged "incompetent," the "person having the care and custody of the incompetent, if any," and "[a]ny other person directed by the court." Ind.Code § 29–1–18–11(f), 29–1–18–14 (repealed by Pub.L. No. 169–1988, § 8 (eff. July 1, 1989)). Thus, adult children of the alleged incapacitated person were not even required to receive notice of

4. The current guardianship statutes were loosely based upon the Uniform Guardianship and Protective Proceedings Act ("UGPPA"). 4 INDIANA ESTATE PLANNING AND PROBATE PRACTICE, § 80.20[1]. Section 2–203(c) of the UGPPA provides that: "A person alleged to be incapacitated is entitled to be present at the hearing in person. The person is entitled to be represented by counsel, to present evidence, to cross-examine witnesses ... [, and to trial by jury]." UGPPA § 2–203(c) (1982). Thus, the UGPPA indicates an intent that only the person alleged to be incapacitated is entitled

to request a trial by jury. Further, Ind.Code § 29–3–5–1(f), which allows persons to request leave to participate, is almost identical to section 2–203(d) of the UGPPA, which provides that: "Any person may apply for permission to participate in the proceeding and the Court may grant the request, with or without hearing, upon determining that the best interest of the alleged incapacitated person will be served thereby. The Court may attach appropriate conditions to the permission."

the petition. Further, the prior guardianship statutes contained no provision for other interested persons, such as other family members, to participate in the determination of whether the alleged incapacitated person needed a guardian. Thus, under the prior guardianship statutes such persons could not request a jury trial in determining whether a guardian should be appointed. The legislature indicated an intent that the right to a jury trial should remain the same in the new guardianship statutes.

■ As for Leo's argument that he should be allowed to respond to the petition and request a jury trial to allow the presentation of a defense for the alleged incapacitated person, we conclude that the guardianship statutes adequately provide for a defense for the alleged incapacitated person. Ind.Code § 29–3–5–1(c) provides that "[u]nless an alleged incapacitated person is already represented by counsel, the court may appoint an attorney to represent the incapacitated person." Further, Ind.Code § 29–3–2–3(a) (1998) provides that "the court shall appoint a guardian ad litem to represent the interests of the alleged incapacitated person or minor if the court determines that the alleged incapacitated person or minor is not represented or is not adequately represented by counsel."

According to Leo, "the policy of liberally construing the law in guardianship proceedings to allow the presentation of a defense of the alleged incapacitated person is best served by allowing a close family member who is willing to shoulder the defense to appear in opposition to the petition and request a jury trial in order to assure that the alleged incapacitated person is afforded the full measure of the rights the law allows." Appellant's Brief at 27. We disagree. Especially in circumstances such as the case at issue here, where families engage in a bitter and contentious dispute over the alleged incapacitated person and her estate, the alleged incapacitated person is better served by representation by disinterested counsel and/or a guardian ad litem appointed by the trial court. We agree with Joseph that these fiduciaries should be the ones to "make the sensitive determination about how Josephine's rights and status should be adjudicated." Appellee's Brief at 15.

In summary, we conclude that the legislature indicated an intent in the guardianship statutes that persons such as Leo, i.e., persons other than the petitioner or alleged incapacitated person, be required to request permission from the trial court to participate in the determination of whether the alleged incapacitated person is in need of a guardian. Further, nothing in the statute indicates that such persons should be allowed to request a trial by jury.[5] The

**5.** The trial court found and Joseph argues that only the alleged incapacitated person can request a jury trial. However, we need not determine whether Joseph, as the petitioner, is also entitled to a jury trial.

Leo questions the result if the alleged incapacitated person, the guardian ad litem, and the appointed attorney disagree as to whether to request a jury trial. Leo also notes that a jury trial must be requested within thirty days "following the service of notice of a petition" and questions whether the thirty days begins when the alleged incapacitated person receives notice or when family members receive

notice of the petition. Joseph points out that an inconsistency exists between the right to request a jury trial and Ind.Code § 29–3–5–3(a), which provides that "the *court* shall appoint a guardian" if the petition alleges and the *"court* finds that: (1) the individual for whom the guardian is sought is an incapacitated person or a minor; and (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor." Ind.Code § 29–3–5–3(a) (emphasis added). A resolution of these issues is not required for us to determine whether Leo

statute governing persons requesting permission to participate provides that "[t]he court may attach appropriate conditions to the permission to participate." I.C. § 29-3-5-1(f). Here, although Leo never requested permission to participate in the proceedings, the trial court impliedly permitted him to participate by accepting and ruling on Leo's various pleadings. However, Leo did not have the right to request a jury trial. Consequently, the trial court did not abuse its discretion by denying Leo's request for a jury trial, and the trial court properly impaneled an advisory jury under Ind. Trial Rule 39(B).[6]

### III.

■■■ The final issue is whether the trial court abused its discretion by admitting certain testimony of the guardian ad litem, Susan Nelson. Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *R.R. Donnelley & Sons Co. v. North Tex. Steel Co., Inc.,* 752 N.E.2d 112, 126 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* at 126–127.

On the first day of the trial, Leo filed a motion in limine regarding "the guardian ad litem's report and recommendation." Appellant's Appendix at 259. Leo argued

that Nelson had "the ability to introduce admissible evidence, call and cross examine witnesses, but [did] not have the ability to testify on matters not involving admissible, personal knowledge." *Id.* at 259–260. At the end of the four-day trial, Nelson began to testify regarding her background. *Id.* at 298–299. Leo pointed out that he had "filed a Motion in Limine concerning her taking the stand and testifying in this case and presenting the Guardian Ad Litem's report." *Id.* at 299. Leo objected "to her taking the stand and testifying in this matter on anything and [reasserted his] Motion in Limine...." *Id.* The trial court denied Leo's objection, and Nelson testified regarding the steps that she took in her investigation. She then concluded as follows:

> It is my recommendation that a guardian be appointed for both [Josephine's] person, I believe that there are healthcare decisions as this lady, this grand lady of seven (sic) continues to age, that there may need to be some healthcare decisions made. I think it is one thing to consent to medical treatment and it's another thing to meaningfully participate in a course of medical treatment and I don't think she can do this at this point. I also believe that a guardian needs to be appointed for her estate. Mr. Delaney very kindly erased the estate plan there, but I think as Mr. Olson testified there are some decisions that need to be made in her best interests,

---

had the right to request a trial by jury. Thus, we leave resolution of these issues for another day.

**6.** Ind. Trial Rule 39(B) provides that:

In any case where there are issues upon which a jury trial has not been demanded or has not properly been demanded or upon which there is no right to trial by jury as of right, the court may submit any or all of such issues to a jury for trial. The verdict shall be advisory unless, before the jury

retires, the court, with the consent of both parties or their attorneys, orders that the verdict shall have the same effect as if a trial by jury had been a matter of right. Such order shall be granted at the court's discretion, and all issues shall be tried as if subject to jury trial as a matter of right unless the parties' consent is limited to fewer issues, or unless the court limits its order to fewer of those issues upon which consent has been given.

whatever happens with the corporation and those need to be done now, and I don't believe that she can meaningfully participate in estate planning or the management of her funds.

*Id.* at 302. After Nelson completed her testimony, Leo moved to strike Nelson's testimony "on the basis of all of the reasons mentioned in the Motion in Limine...." *Id.* at 303. Leo also argued that "the Guardian Ad Litem has made a purported expert opinion to this jury as to how they should conclude and how they should find and what they should rule on in this case and that is totally improper for any witness unless they qualify under the rules under some ... other area...." *Id.* at 304.

Leo argues that Nelson's testimony that Josephine was in need of a guardian of her person and estate did not qualify as admissible opinion testimony under either Ind. Evidence Rule 701, which addresses opinion testimony by lay witnesses, or Ind. Evidence Rule 702, which addresses opinion testimony by expert witnesses. Leo also contends that Nelson's opinions were based largely upon inadmissible hearsay. According to Leo, the alleged erroneous admission of Nelson's testimony was not harmless because the jury's questions during deliberations focused upon Nelson's role in the proceeding and her testimony.

■ We first note that Leo did not object at the trial on the basis of Ind. Evidence Rule 701. A party may not present one ground for an objection at trial and assert a different one on appeal.

*Lashbrook v. State,* 762 N.E.2d 756, 759 (Ind.2002). Consequently, Leo has waived this argument. As for Leo's argument under Ind. Evidence Rule 702, the only mention of Nelson's testimony as expert testimony occurred after Nelson had already concluded her testimony. The failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal. *Brown v. State,* 783 N.E.2d 1121, 1125 (Ind.2003). Consequently, Leo also waived his argument under Ind. Evidence Rule 702.

■ We are left only with Leo's argument that Nelson's opinions were based largely upon inadmissible hearsay. At the beginning of Nelson's testimony, Leo "reassert[ed]" his motion in limine, in which he argued that Nelson could only testify to matters involving "admissible, personal knowledge."[7] Appellant's Appendix at 259–260. Nelson then continued her testimony and testified regarding her background, the steps that she took in her investigation of this matter, and her recommendations. Leo's objection is based upon Nelson's recommendation that a guardian be appointed for Josephine's person and estate. However, Leo did not object at the time that Nelson gave her recommendations. Rather, after Nelson completed her testimony, Leo moved to strike and appeared to argue that Nelson's recommendations were based upon inad-

---

7. We also question whether Leo appropriately advised the trial court of his specific objection by simply reasserting his motion in limine. We have on occasion held that such objections are sufficient where the record demonstrates that the reference to a prior objection fully and clearly advises the trial court of the specific grounds for the objection. *Edwards v. State,* 682 N.E.2d 800, 802 (Ind.Ct.App. 1997). Here, Leo filed his motion in limine on the first day of the trial, and Nelson did not testify until the last day of the four-day trial. Moreover, his motion in limine addressed several issues in addition to Nelson's testimony. Consequently, we question whether the objection clearly advised the trial court of the specific grounds for Leo's objection.

missible hearsay. As noted above, the failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal. *Brown,* 783 N.E.2d at 1125. Consequently, Leo also waived this argument.

Waiver notwithstanding, Indiana courts have not addressed the admissibility of a guardian ad litem's opinion.[8] In actions for child custody or modification, the trial court is permitted by statute to order an investigation by a guardian ad litem, and the guardian ad litem's report: "(1) may be received in evidence at the hearing; and (2) may not be excluded on the grounds that the report is hearsay or otherwise incompetent." Ind.Code § 31–17–2–12 (1998). Further, the statute provides that the guardian ad litem may be called to testify and may be subject to cross examination. *Id.* Although the guardianship statutes provide that the purpose of the guardian ad litem is to "represent the interests of the alleged incapacitated person," the guardianship statutes contain no provisions regarding the admissibility of the guardian ad litem's recommendations. Ind.Code § 29–3–2–3(a). Other jurisdictions have dealt with the admissibility of a guardian ad litem's recommendation in the absence of statutory authority regarding the admissibility in a variety of manners. *See* Lidman, Raven & Hollingsworth, Betsy, *The Guardian Ad Litem in Child Custody Cases: The Contours of Our Judicial System Stretched Beyond Recognition,* GEORGE MASON LAW REVIEW, Winter 1998; *see also Heistand v. Heistand,* 267 Neb. 300, 673 N.W.2d 541, 550 (2004) (holding that the opinion testimony of a guardian ad litem and the hearsay incorporated therein were erroneously admitted); *In re Duvall,* 67 S.W.3d 736, 740 (Mo.Ct.App.2002) (holding that the trial court did not err by permitting the guardian ad litem to give his recommendation or by "relying on the [guardian ad litem's] recommendation as the recommendation was supported by evidence received at trial").

■ We need not decide this issue today because, even if we assume that the trial court abused its discretion by admitting the evidence, any error in the advisory jury hearing Nelson's testimony was harmless. When a case is tried to the bench, we presume that the court ignored inadmissible evidence in reaching its judgment. *Estate of Fowler v. Perry,* 681 N.E.2d 739, 744 n. 2 (Ind.Ct.App.1997), *trans. denied.* Because we have held that

---

8. Joseph argues that we adequately addressed this matter in *In re D.V.H.,* 604 N.E.2d 634 (Ind.Ct.App.1992), *trans. denied.* There, we noted the following:

> During the testimony of guardian ad litem Jan Fleener, Mother moved to strike as hearsay the following response:
> Q: Ms. Fleener, could you summarize, based upon your interview with [D.H.] and your assessment, what you observed his wishes to be?
> A: Yes. [D.H.] made it very clear to me that he did not want to have any ongoing contact with his mother, that he wanted to remain in E.W.'s home, in her care, forever. And that E.W. was, in his mind, his mother.
> Record, p. 1004.

The trial court instructed the guardian ad litem to refrain from repeating verbatim statements made by D.H. However, he observed that IND. CODE 31-6-3-4 (providing for the appointment of a guardian ad litem to represent the child's interests) contemplates some summarization of the child's desires and state of mind. We agree, and find no abuse of discretion in the admission of Fleener's testimony.

*Id.* at 638–639. However, *D.V.H.* was decided before the adoption of our rules of evidence. Further, although we allowed the guardian ad litem to summarize the child's desires, we did not specifically address whether the guardian ad litem's recommendations were admissible.

Leo was not entitled to request a jury trial, any error in admitting Nelson's testimony was harmless. The jury was advisory only, and we presume that the trial court ignored any inadmissible evidence in determining that Josephine was in need of a guardian of her person and estate. Even if we ignore Nelson's recommendations, a substantial amount of evidence was presented indicating that Josephine was in need of a guardian of her person and estate. Consequently, any error in admitting Nelson's testimony was harmless. We do not, however, mean to suggest that statements and other submissions from a guardian ad litem made before a nonadvisory jury are not completely subject to the rules of evidence for their admissibility.

For the foregoing reasons, we affirm the judgment of the trial court granting permanent guardianship of Josephine's person and property.

Affirmed.

MATHIAS, J. and VAIDIK, J. concur.