## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 12 2016, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Crystal Sharp Bauer
Law Office of Crystal Bauer
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Martha L. Wischmeyer
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Hearn,

*Appellant-Respondent,*

v.

Anna Hearn,

*Appellee-Petitioner.*

July 12, 2016

Court of Appeals Case No.
64A05-1504-DR-280

Appeal from the Porter Superior Court

The Honorable William E. Alexa, Judge

The Honorable Katherine R. Forbes, Magistrate

Trial Court Cause No.
64D02-0812-DR-12624

**Vaidik, Chief Judge.**

# Case Summary

[1] After the trial court approved their divorce settlement, Edward Hearn ("Father") and Anna Hearn ("Mother") filed more than a dozen motions regarding the implementation of the settlement agreement. Father appeals the trial court's rulings on several issues involving property division, spousal maintenance, child support, and attorney's fees. We affirm.

# Facts and Procedural History

[2] In December 2008, Mother filed a petition to dissolve her marriage to Father. They eventually mediated a settlement of all outstanding issues, and the trial court approved the agreement in March 2010. Paragraph 20 of the agreement provided for the disposition of a rental property on Oak Street in Valparaiso, which Father managed during the marriage, as follows:

> Father shall quit-claim his interest in the Oak Street property to mother. Father shall bring the mortgage, real estate taxes now due and utility payments current on said real estate and upon his doing so mother shall then take over the financial responsibilities for said property including the payment of the mortgage, real estate taxes, utilities and other expenses associated therewith. All security deposits shall be transferred to mother. Mother shall obtain the release of father's financial obligation due and owing on the mortgage for said real estate within one (1) year. In the event mother does not obtain father's financial release on said obligation or becomes in arrears two (2) months or more, father may bring the payments current and he shall be entitled to a dollar for dollar credit for the payments which he made from the sale proceeds. Mother shall place the real estate for sale in the event of her default or upon her failure to obtain release of

father's financial obligations related thereto within one (1) year of the entering of the decree. Mother shall be considered for all purposes as the successor in interest of all leases and father shall provide mother with the originals of same.

Ex. 1, ¶20. The agreement also required Father to pay $35,000 to Mother's attorneys and $2000 in spousal maintenance to Mother every month for twelve months (a total of $24,000).

[3] Shortly after the trial court approved the agreement, Mother contacted the Oak Street tenants and took over receipt of the rent payments. However, Father continued paying most or all of the expenses on the property, though without actually bringing them current, which would have shifted the expenses to Mother under paragraph 20 of the settlement agreement. Father continued to pay expenses until Mother completed the refinancing in May 2011. In turn, he deducted these amounts from the maintenance he was required to pay Mother. As a result, he paid Mother only $3610.57 in maintenance over the twelve months following the settlement, rather than the ordered amount of $24,000.

[4] Between April 2010 and December 2012, the parties filed numerous motions relating to the implementation of the settlement agreement, including multiple motions regarding Father's maintenance obligation and the handling of the Oak Street property. Father also filed a motion to reduce the amount of child support he was required to pay.

[5] After holding at least eight days of hearings between 2012 and 2014, the trial court issued a single order resolving all pending motions. The three rulings

Father challenges on appeal are as follows: (1) that Father's decision to continue paying the Oak Street expenses did not reduce the amount he owed for maintenance, meaning that he is responsible for a maintenance arrearage in excess of $20,000; (2) that Father's weekly child support obligation "for the calendar year 2014 and going forward" is $367, Appellant's App. p. 199; and (3) that Father owes $500 to one of Mother's attorneys, James Daugherty, "[p]ursuant to the parties['] Agreed Dissolution Decree," *id*. at 203.

# Discussion and Decision

## I. Oak Street Expenses

[6] Father first contends that the trial court's calculation of his financial obligation to Mother should have included a credit in his favor based on the fact that he continued paying the expenses on the Oak Street property after Mother began receiving the rents. He asserts that he was entitled to receive the rents as long as he was paying the expenses, and he seeks a credit equaling either the rents received by Mother or the mortgage payments he made. Father asserts that the trial court's refusal to give him such a credit was based on a misinterpretation of the settlement agreement. As with any contract, interpretation of a settlement agreement presents a question of law and is reviewed de novo. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008).

[7] Father concedes that Mother was to become the sole owner of the Oak Street property under the settlement agreement. Furthermore, he does not dispute Mother's assertion that, under Indiana law, the owner of a rented property is

generally entitled to receive the rents. *See* Appellee's Br. p. 15 (citing *Washington Auto Sales Co. v. People's State Bank*, 100 Ind. App. 1, 194 N.E. 184 (1935)); *see also* Appellant's Reply Br. p. 12. Instead, he argues that he and Mother agreed to depart from this general rule, that is, they agreed that the party paying the expenses would also receive the rents, regardless of ownership.

[8] Specifically, Father relies on the second sentence of paragraph 20 of the parties' settlement agreement, which provides: "Father shall bring the mortgage, real estate taxes now due and utility payments current on said real estate and upon his doing so mother shall then take over the financial responsibilities for said property including the payment of the mortgage, real estate taxes, utilities and other expenses associated therewith." Ex. 1, ¶20. According to Father, this sentence allowed him to continue receiving the rents until he brought the expenses current, and because he never brought the expenses current before Mother refinanced the property in May 2011, he was entitled to the rent payments during that entire period. In other words, Father reads the sentence to mean that he could receive the rents as long as he wished (and deprive Mother of the rents as long as he wished) simply by keeping the expenses in arrears. But the sentence says nothing about entitlement to rents; it addresses only the payment of expenses.

[9] Furthermore, "[i]n interpreting a contract, we are compelled to view a particular section as a whole rather than examine each phrase therein in isolation." *Steiner v. Bank One Ind., N.A.*, 805 N.E.2d 821, 824-25 (Ind. Ct. App. 2004). To the extent that there is any ambiguity in the second sentence of

paragraph 20, it is cleared up by the remainder of the paragraph. The first sentence provides, "Father shall quit-claim his interest in the Oak Street property to mother." Ex. 1, ¶20. It does not say, "Father shall quit-claim his interest in the Oak Street property to mother *after he brings the expenses current*." Another sentence provides, "All security deposits shall be transferred to mother." Ex. 1, ¶20. It does not say, "All security deposits shall be transferred to mother *after Father brings the expenses current*." Perhaps most importantly, the final sentence provides, "Mother shall be considered for all purposes as the successor in interest of all leases[.]" Ex. 1, ¶20. It does not say, "Mother shall be considered for all purposes as the successor in interest of all leases *after Father brings the expenses current*." Father did not quote these parts of paragraph 20 in his brief, presumably because they are directly at odds with his strained interpretation of the second sentence. Read as a whole, the meaning of the paragraph is clear: Mother was to become the owner of the Oak Street property, and therefore entitled under Indiana law to receive the rents, regardless of when or whether Father brought the expenses current. The trial court was correct to interpret the provision as such.[1]

---

[1] The trial court ordered Father to pay $25,000 of Mother's attorney's fees based in part on the "many issues surrounding the Oak Street Property." Appellant's App. p. 206. As such, Father contends that if we reverse the trial court's ruling regarding the Oak Street property, we should also reverse its attorney-fee award. Because we affirm the trial court's ruling on the Oak Street property, we need not address the fee award.

# II. Child Support

Next, Father asks us to "remand the case to recalculate the child support obligation for 2014 and forward[.]" Appellant's Reply Br. p. 19. The trial court set that obligation at $367 per week based in part on its determination that Mother incurs a "Work-related Child Care Expense" of $175 per week. Appellant's App. p. 212. According to Father, the trial court reached the $175 figure based in part on the fact that "Mother claimed that she paid her babysitter $200 and then $250 per week." Appellant's Br. p. 23. This, Father says, is where the trial court erred. He contends that Mother was "judicially estopped" from claiming $200-$250 in weekly child-care expenses because, for tax years 2011 and 2013, respectively, Mother submitted forms to the IRS indicating gross child-care expenses of $4100 (approximately $79 per week) and $5000 (approximately $96 per week). Appellant's Br. p. 22. In support of his argument, Father relies on our decision in *Chance v. State Auto Insurance Cos.*, 684 N.E.2d 569 (Ind. Ct. App. 1997), *reh'g denied*, *trans. denied*. There are three flaws in Father's argument.

First, Father's claim of "judicial estoppel" is misplaced. The doctrine of judicial estoppel involves inconsistent positions taken in *judicial* proceedings. *See, e.g., Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237-38 (Ind. Ct. App. 1998) (addressing allegedly inconsistent positions taken in state-court case and related federal-court case), *reh'g denied*, *trans. denied*. Here, though, Father alleges that Mother's in-court assertion about her child-care expenses was inconsistent with earlier assertions made on tax forms, *outside of litigation*.

[12] Second, even if we disregard that threshold legal error, Father has not provided a record sufficient to allow for meaningful appellate review of his claim. Perhaps Mother had a perfectly reasonable explanation for any alleged inconsistency between her tax forms and her in-court testimony. Perhaps she did not. The reason we do not know is that Father had only some of the testimony and exhibits transcribed for purposes of his appeal. He is unable even to provide a record citation for his assertion that "Mother claimed that she paid her babysitter $200 and then $250 per week." Appellant's Br. p. 23. Our rules require an appellant to provide "all portions of the Transcript necessary to present fairly and decide the issues on appeal." Ind. Appellate Rule 9(F)(5). Father failed to do so with regard to his judicial estoppel argument, which means that the argument is waived. *See, e.g., Meisberger v. Bishop*, 15 N.E.3d 653, 659 (Ind. Ct. App. 2014).

[13] Third, notwithstanding this waiver, Father has not identified the sort of clear, direct inconsistency that would justify a finding of estoppel. In the case he relies on, *Chance*, we held that a mother was estopped from asserting that her son was a resident of her Fort Wayne home for purposes of an insurance claim after she asserted that he was a resident of someone else's home in Marion for purposes of an earlier, closely-related insurance claim. 684 N.E.2d at 571. Here, Father tells us (again, without citation to the record) that "Mother claimed that she paid her babysitter $200 and then $250 per week," and he asserts that this is inconsistent with entries Mother made on tax forms for 2011 and 2013. But—even if we assume that those entries mean what Father says

they mean—he does not allege, let alone establish, that Mother was talking about 2011 or 2013 when she claimed to have paid $200-$250 per week. It is possible that Mother was testifying about her expenses in 2010, 2012, or the first half of 2014 (when several of the hearings were held), or even her anticipated expenses for the remainder of 2014 or for 2015. If she was, then there was no inconsistency, and if there was no inconsistency, there can be no estoppel, judicial or otherwise. *See Wabash Grain, Inc.*, 700 N.E.2d at 237-38; *Chance*, 684 N.E.2d at 571. Father has not shown an inconsistency, and we will not presume one.

[14] For all of these reasons, we reject Father's judicial estoppel claim and affirm the trial court's child-support calculations.

## III. Fees Owed to Attorney Daugherty

[15] Father also challenges the part of the trial court's order that says the settlement agreement requires him to pay $500 to Attorney James Daugherty. While it is true that the settlement agreement required Father to pay $35,000 to Mother's attorneys, Attorney Daugherty was not one of them. His representation of Mother did not begin until well after the parties reached their settlement. Therefore, the trial court erred when it wrote that Attorney Daugherty is owed $500 "[p]ursuant to the parties['] Agreed Dissolution Decree[.]" Appellant's App. p. 203.

[16] However, the trial court *did*, after one of the many post-settlement hearings, order Father to pay $500 to Attorney Daugherty. In June 2011, Father filed a

motion to correct error relating to some of the attorney's fees he owed under the settlement agreement. A hearing was scheduled for August 4, 2011, but at some point Father paid the fees in question, rendering his motion moot. Father, though, did not ask to have the hearing vacated, and Attorney Daugherty appeared as scheduled on behalf of Mother. Afterward, the trial court issued an order that provided in part:

> The court is advised that the subject matter of [Father's] Motion to Corrects [sic], to-wit: the requirements for the payment of a $25,000 attorney fee judgment, is now moot in that payment has been remitted by [Father]. [Mother], by counsel, shows the court that since July 29, 2011, [Mother] has been seeking and has been requesting that this hearing be vacated, but that [Father] has failed to do so or to even contact the court.

> [Mother's] Petition for the payment of attorney fees and sanctions in the sum of $500, based upon the travel time and time expended at court, is warranted and is hereby granted. [Father] is hereby ordered to remit the sum of $500 to [Mother's] counsel, James E. Daugherty, within a period of 30 days from August 4, 2011.

Appellee's App. p. 1.

[17] On appeal, Father does not deny that he was directed to pay $500 to Attorney Daugherty. Rather, he asks us to reverse that part of the trial court's order merely because the court misidentified the source of the obligation, referencing the settlement agreement itself instead of the post-settlement court order. However, as Mother notes, Indiana Appellate Rule 66(A) provides:

No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

The trivial error highlighted by Father falls squarely within the terms of this rule. The critical aspect of the trial court's order is the *existence* of the $500 obligation, not the precise origin of it. We will not disturb the trial court's ruling on this issue.

[18]     Affirmed.

Barnes, J., and Mathias, J., concur.