# FOR PUBLICATION



**FILED**

Feb 13 2012, 8:16 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BENJAMIN L. NIEHOFF**
Andrews Harrell Mann Carmin & Parker, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**GEOFFREY M. GRODNER**
**KENDRA G. GJERDINGEN**
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BLOOMINGTON MAGAZINE, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 53A05-1012-SC-790 |
| | ) | |
| MARK KIANG d/b/a MIKADO | ) | |
| RESTAURANT, SUNBEAM CORP., | ) | |
| and TRUFFLES 56 DEGREES | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-0812-SC-6004

**February 13, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Bloomington Magazine, Inc. ("Bloom") appeals the trial court's order denying its Verified Motion to Set Aside Judgment in Trial Court pursuant to Indiana Trial Rule 60(B)(2), 60(B)(3), or alternatively 60(B)(8) (the "Motion to Set Aside"), entered on January 4, 2010, in favor of Mark Kiang d/b/a Mikado Restaurant, Sunbeam Corp., and Truffles 56 Degrees, Inc. ("Mikado" and "Truffles," respectively, and collectively, "Kiang"). Bloom raises three issues one of which we find dispositive and which we consolidate and restate as whether the court erred in denying Bloom's Motion for Change of Venue from Judge / Motion for Disqualification/Recusal ("Motion to Recuse") and Motion to Set Aside. We reverse and remand.

The relevant facts follow.[1] Bloom publishes Bloom Magazine, a publication which "depends almost entirely on ad revenues for its existence." Appellant's Appendix at 91. On August 28, 2007, Bloom and Kiang executed two agreements to place advertisements in the magazine for both Mikado and Truffles. Id. at 70-71. When a dispute as to payment arose, Bloom filed claims on December 19, 2008, seeking damages "along with prejudgment interest accruing from the time of the demand, November 21, 2008."[2] Id. at 95. On February 17, 2009, Attorney Geoffrey Grodner entered an appearance on behalf of Kiang.

---

[1] The record does not contain a copy of the transcript from the November 10, 2009 hearing. On July 6, 2010, Bloom filed a motion to certify verified statement of evidence along with a verified statement of evidence, noting that it "has learned that there may be no transcript available as to the November 10, 2009 hearing." Appellant's Appendix at 34. On December 2, 2010, the Monroe County Circuit Court filed a Certified Statement of the Evidence, from which many of the facts recited below are taken.

[2] We note that Bloom filed separate actions against Mikado under Cause Number 53C08-0812-SC-6005, and Truffles under Cause Number 53C08-0812-SC-6004. The actions were consolidated on March 18, 2009, and Cause Number 53C08-0812-SC-6005 was ordered closed.

On November 10, 2009, a hearing before Judge Valeri Haughton was held on Bloom's claims against Kiang. On January 4, 2010, the court issued an order finding in favor of Kiang and against Bloom. On February 3, 2010, Bloom filed a motion to correct error which the court denied on March 9, 2010. Bloom appealed, and on July 9, 2010, while the appeal was pending, Bloom filed in this court a Verified Application for Leave to File Motion to Set Aside Judgment in Trial Court Pursuant to Indiana Trial Rule 60(B)(2), 60(B)(3), or Alternatively 60(B)(8), in which Bloom stated in part that "[s]ubsequent to the judgment, the filing of the Motion to Correct Errors and Notice of Appeal, [Malcolm Abrams, the owner and publisher of Bloom Magazine] discovered that counsel for [Kiang], Geoffrey M. Grodner, served as Chair for Judge Haughton's campaign committee for the 2008 elections," that "[t]he relationship between judge and the opposing counsel is of the type of information that can reasonably be considered relevant to a possible motion for disqualification," citing the Indiana Code of Judicial Conduct, Rule 2.11(A), and that "[n]either the judge nor the opposing counsel revealed such information." Id. at 29. On August 13, 2010, this court issued an order granting Bloom's motion, stating that pursuant to Logal v. Cruse, 368 N.E.2d 235, 267 Ind. 83 (Ind. 1977), the appeal was dismissed without prejudice and the matter was remanded to the trial court for consideration.

On August 30, 2010, Bloom filed in the trial court its Motion to Set Aside and made substantially the same allegations as were made to this court in Bloom's July 9, 2010 filing. Bloom also filed a Motion to Recuse, in which it requested that Judge Haughton recuse herself from ruling on the Motion to Set Aside and that a special judge

3

be appointed. A hearing was held on both of Bloom's motions on October 5, 2010. At the hearing, the court noted that Mr. Grodner was the "titular chair" of her campaign committee on her 2008 election campaign. Transcript at 13. The court took the Motion to Recuse under advisement. On October 13, 2010, Kiang filed a "Response of Defendants to Citation by Plaintiff of *Tyson v. State*," to which Bloom filed a reply on October 25, 2010. Appellant's Appendix at 58. On November 17, 2010, the court denied Bloom's Motion to Recuse.

On December 2, 2010, the court held a hearing on Bloom's Motion to Set Aside in which Abrams testified that several months after the court had ruled on Bloom's small claims action, he "found out that [attorney Geoffrey Grodner] had served as the chairman of . . . Judge Valeri Haughton's election committee, and [he] thought this was a conflict of interest." Transcript at 33. Abrams testified that he learned of this through "Ronnie, who is Bloom's associate editor," and that a friend of Ronnie had informed Ronnie who in turn told Abrams. Id. Abrams testified that he had not been made aware of the relationship prior to the trial and was "shocked" when he learned of it. Id. at 34. Abrams also testified that in a previous action before Judge Haughton, she "announced that she was [an] acquaintance of the defendant" in the matter and "offered to recuse herself and we accepted that offer." Id. at 35. The court denied Bloom's Motion to Set Aside. The court also issued its Certified Statement of Evidence.[3]

The issue is whether the court erred in denying Bloom's Motion to Recuse and Motion to Set Aside. At the outset, we note that although this issue was briefed by

---

[3] On January 3, 2011, Bloom filed its request to amend the certified statement of evidence, which the court denied on January 20, 2011.

4

Bloom separately as to each motion, the allegations underlying each motion are the same. Bloom's Motion to Recuse requests that Judge Haughton recuse herself from the hearing on the Motion to Set Aside and notes that the Motion to Set Aside "is based on the trial court's failure to disclose a political relationship with opposing counsel" and thus would require examination of such failure. Appellant's Appendix at 49. Both motions also cite to Indiana Code of Judicial Conduct Rule 2.11 as the underlying basis for recusal. Accordingly, the analysis in answering these questions applies with equal force in both instances. We will first examine the court's denial of Bloom's Motion to Recuse and will subsequently examine, to the extent necessary, its denial of Bloom's Motion to Set Aside pursuant to Ind. Trial Rule 60(B).

A ruling upon a motion to recuse rests within the sound discretion of the trial judge and will be reversed only upon a showing of abuse of that discretion. In re Estate of Wheat, 858 N.E.2d 175, 183 (Ind. Ct. App. 2006) (citing In re Guardianship of Hickman, 805 N.E.2d 808, 814 (Ind. Ct. App. 2004), trans. denied). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Id. When reviewing a trial judge's decision not to disqualify herself, we presume that the trial judge is unbiased. Id. "In order to overcome that presumption, the appellant must demonstrate actual personal bias." Id. (quoting Hickman, 805 N.E.2d at 815). In addition, the mere appearance of bias and partiality may require recusal if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality. Patterson v. State, 926 N.E.2d 90, 94 (Ind. Ct. App. 2010). Upon review of a judge's failure to recuse, we will

5

assume that a judge would have complied with the obligation to recuse had there been any reasonable question concerning impartiality, unless we discern circumstances which support a contrary conclusion. Hite v. Haase, 729 N.E.2d 170, 176 (Ind. Ct. App. 2000) (quoting Moore v. Liggins, 685 N.E.2d 57, 63 (Ind. Ct. App. 1997)); see also Leisure v. Leisure, 589 N.E.2d 1163, 1169 (Ind. Ct. App. 1992), aff'd in part and rev'd in part, 605 N.E.2d 755 (Ind. 1993).

Ind. Trial Rule 79(C) governs the disqualification or recusal of a judge and provides:

> A judge shall disqualify and recuse whenever the judge, the judge's spouse, a person within the third degree of relationship to either of them, the spouse of such a person, or a person residing in the judge's household:
>
> (1)  is a party to the proceeding, or an officer, director or trustee of a party;
>
> (2)  is acting as a lawyer in the proceeding;
>
> (3)  is known by the judge to have an interest that could be substantially affected by the proceeding; or
>
> (4)  is associated with the pending litigation in such fashion as to require disqualification under the *Code of Judicial Conduct* or otherwise.

Canon 2 of the Indiana Code of Judicial Conduct commands: "A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently." Ind. Judicial Conduct Rule 2.11 governs the disqualification of judges and provides in part:

> (A)  A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

6

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. . . .

Also, Rule 2.11 contains comments which are provided for "guidance regarding the purpose, meaning, and proper application of the Rules" and to "identify aspirational goals for judges," Ind. Code of Judicial Conduct, Scope at 3-4, including:

> [1] Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply. In many jurisdictions, the term "recusal" is used interchangeably with the term "disqualification."

> [2] A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.

> * * * * *

> [5] A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.

Ind. Code of Judicial Conduct Rule 2.11 cmt. 1-2, 5.

Bloom argues that "[i]f any question is presented as to impartiality, the court should err on the side of recusal," and cites to a discussion penned by Chief Justice Shepard regarding the case of Tyson v. State, 622 N.E.2d 457 (Ind. 1993). Appellant's Brief at 15. Bloom argues that "[w]hile the facts in *Tyson* differed from the facts in the present case, *Tyson* is instructive of the standard that should be observed in considering recusal when impartiality may be questioned," which it cites as follows:

> "[T]he question is not whether the judge's impartiality is impaired in fact, but whether there exists a reasonable basis for questioning the judge's impartiality." A judge has a duty to promote public confidence in the

7

impartiality of the judiciary. [Tyson, 622 N.E.2d at 459]. "[A] judge who sits on a case notwithstanding legitimate grounds for recusal can damage public confidence in his impartiality for years to come." Id. at 460. "Indiana practice has always leaned toward recusal where reasonable questions about impartiality exist." Id. "In a close case where impartiality might reasonably be questioned, a judge must recuse." Id.

Id.

Bloom argues that Abrams was not aware of the relationship between Grodner and Judge Haughton in advance of the trial, that this relationship was relevant to him and presented questions to him about impartiality, that he has "asserted that had the fact been known he would have requested a new judge prior to the trial," and that "[g]iven the nature of the issues raised, a reasonable question as to impartiality is presented concerning the propriety of whether the trial judge should have made a determination on the Motion to Set Aside" and thus "recusal would have been proper for consideration" of that motion. Id. at 16. Bloom also notes that Judge Haughton had personal knowledge of her relationship with Grodner and cites to her statements at the hearings in which "the court discussed the relationship and at one point in the hearing on December 2, 2010, indicated that she felt like she was testifying." Id. (citing Appellant's Appendix at 140).

Kiang argues that "[t]wo important distinctions" exist between this case and the matter in Tyson, namely that "in this case there are no allegations of ex-parte communications and the request for recusal was made after the order was entered." Appellees' Brief at 9. Kiang focuses on the Code's requirement that a judge need only "disqualify herself from a proceeding [] where her impartiality 'might *reasonably* be questioned,'" and argues that "Bloom has not shown that an objective person, knowledgeable of all the circumstances would have a reasonable basis for doubting the

8

judge's impartiality." Id. Kiang argues that "[i]n fact, Bloom and his counsel admitted there was no evidence the judge's order was the result of bias" and that "Bloom failed to demonstrate that the judge did anything improper." Id.

The crux of Bloom's contention is that Attorney Grodner's position as chairman of Judge Haughton's 2008 election campaign presented a situation such that her impartiality during trial might reasonably be questioned, that her failure to disclose this information in advance of trial was to be the subject of the December 2, 2010 hearing on Bloom's Motion to Set Aside, and that accordingly she should have granted its Motion to Recuse in advance of that hearing. In evaluating whether Judge Haughton abused her discretion in denying Bloom's motion, we find certain cases, discussed below, instructive.

First, decisions from at least one court have made the proximity in time in which an attorney serves on a judicial campaign committee to the current matter the relevant inquiry in determining whether a trial court judge should grant a motion to disqualify. In Neiman-Marcus Grp., Inc. v. Robinson, the Florida District Court of Appeal, Fourth District, held that "where a judge selects an attorney to serve in the special role of campaign treasurer in an election campaign, and the campaign is not remote in time from the date the relationship is revealed to the opposing party, disqualification is warranted." 829 So.2d 967, 968 (Fla. Dist. Ct. App. 2002). In that case, at the conclusion of a summary judgment hearing, "the trial judge informed the parties that the Respondents' attorney served as his campaign treasurer in his reelection campaign," and the petitioners moved for disqualification of the judge. Id. The trial court denied the motion, noting that

9

"disqualification wasn't warranted since the judge's campaign ended before the motion for disqualification was filed." Id.

On appeal, the court began its analysis by recognizing previous precedent that "an attorney's involvement with the reelection committee of a judge's *ongoing* campaign may be grounds for disqualification of the judge," but it disagreed that a bright line between ongoing and concluded campaigns exists. Id. (citing Caleffe v. Vitale, 488 So.2d 627 (Fla. Dist. Ct. App. 1986)). The court agreed with another Florida decision that "disqualification 'for a period of time, perhaps two years, until . . . considering all the circumstances . . . , [the judge's] impartiality cannot reasonably be questioned,'" was appropriate "guidance" that trial judges should follow in considering motions to disqualify. Id. (citing Barber v. Mackenzie, 562 So.2d 755 (Fla. Dist. Ct. App. 1990), rev. denied, 576 So.2d 288 (Fla. 1991) (quoting Fla. Sup.Ct. Comm. on Stds. of Conduct Concerning Judges, Op. 84-23 (Oct. 26, 1984))). The court ordered the trial judge on remand to enter an order of disqualification, noting that "[h]ere, a matter of days separated the conclusion of the campaign and the date the judge revealed the basis for disqualification," and that therefore "the relationship was not so remote in time as to dispel any appearance of impropriety." Id.

In so holding, the court distinguished Garcia v. Am. Income Life Ins. Co., which held that "no error is shown in the denial of plaintiffs' post-trial motion to disqualify the trial judge" based upon the fact that defense counsel's wife was the trial court judge's campaign manager in the judge's last re-election campaign "because the subject campaign was four years prior to the motion to disqualify in this case, and, thus, was too

10

remote in time to engender a well-grounded fear by the plaintiffs that they would not receive a fair trial or hearing at the hands of the judge." 664 So.2d 301, 302 (Fla. Dist. Ct. App. 1995), rev. denied, 673 So.2d 29 (Fla. 1996); see Neiman-Marcus, 829 So.2d at 969. See also Gluth Bros. Const., Inc. v. Union Nat. Bank, 548 N.E.2d 1364, 1368-1369 (Ill. App. Ct. 1989) (holding that trial judge was not required to recuse from a matter in which one of the parties' litigants had served as his campaign manager nearly six years previous and examining Caleffe, 488 So.2d at 629), appeal denied, 553 N.E.2d 395 (Ill. 1990).

Here, we find that the professional relationship between Judge Haughton and Attorney Grodner, in which Grodner served as the chairman of Judge Haughton's 2008 election committee, was not so remote in time so as to dispel the appearance of an impropriety such that a reasonable person would have a rational basis for doubting her impartiality. We find particularly relevant that Grodner's appearance in this matter was filed in February 2009, which was three months following the election at issue. Despite the fact that the Motion to Recuse was filed in August 2010, that motion requested recusal from a Trial Rule 60(B) hearing concerning Judge Haughton's failure to recuse herself from a hearing taking place months earlier, in November 2009, at which Attorney Grodner had represented Kiang. Also, the chronological case summary reveals that following the filing of his appearance and leading up to the bench trial, Grodner filed documents in this matter in Judge Haughton's court in March 2009, April 2009, June 2009, and August 2009. We also note that the Motion to Recuse itself was filed within two years of the 2008 election.

11

Thus, we conclude that the trial court abused its discretion by denying Bloom's Motion to Recuse from hearing the Motion to Set Aside, and accordingly we remand for a hearing on Bloom's Motion to Set Aside to be heard by a special judge in accordance with Ind. Trial Rule 79.[4]

For the foregoing reasons, we reverse the court's denial of Bloom's Motion to Recuse, and we remand for proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.

---

[4] We note that on remand, the parties will have the opportunity, among other things, to introduce evidence at the hearing regarding the requirements of Ind. Trial Rule 60(B)(2) and 60(B)(8) including whether evidence of the professional relationship between Judge Haughton and Attorney Grodner satisfies T.R.60(B)(2)'s requirement that such evidence be newly discovered and "which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59 . . . ."