## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 11:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Duane Herron,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2017

Court of Appeals Case No.
71A04-1704-CR-743

Appeal from the
St. Joseph Superior Court

The Honorable
Elizabeth C. Hurley, Judge

Trial Court Cause No.
71D08-1501-F6-17

**Kirsch, Judge.**

[1] Following a jury trial, Duane Herron ("Herron") was convicted of Level 6 felony battery with moderate bodily injury.[1] He appeals and raises the following two restated issues:

> I. Whether the State presented sufficient evidence to convict him; and
>
> II. Whether the trial judge should have recused herself.

[2] We affirm.

## Facts and Procedural History

[3] In January 2015, Herron was living with his then-girlfriend, J.G. At that time, she was working the 11:00 p.m. to 7:00 a.m. shift at her job.[2] On January 5, 2015, J.G. came home from work and slept until mid-afternoon. After she awoke, Herron started an argument with J.G., who did not want to argue and tried to ignore him. He made several statements to her that he was "not no psycho" and "not no creep," and eventually she responded "yeah, you are[,]" at which point Herron grabbed her phone from her and began beating her. *Tr. Vol. II* at 36-37. Initially, J.G. was on the couch, and Herron repeatedly hit her in the face. He then pulled her off the couch and across the room, such that J.G. was lying on the floor by the fireplace. Herron sat on her chest, straddling

---

[1] *See* Ind. Code § 35-42-2-1(b)(1), (d)(1). We note that Indiana Code section 35-42-2-1 was amended effective July 1, 2016; however, we apply the statute that was in effect at the time that Herron committed his offense.

[2] Herron worked for the same employer.

her, and continued to hit her face and head. J.G. struggled to breathe with Herron sitting on her. *Id*. at 37. Eventually, he stopped hitting her, stood up, and sat on the couch. Herron yelled and cursed at her, telling her to get up off the floor. Initially, she was not able to get herself off the floor, as her head was "spinning," and she kept falling backward, but eventually, she pulled herself up and reached a chair. *Id*. J.G. said to Herron, "you could have killed me," and he replied, "I was trying to." *Id.* at 38. During the incident, J.G.'s shirt got ripped, her earring was pulled from her ear, and her blood got on her clothing and Herron's clothing. Her face and ear were bruised and bloodied. Herron told her to go get an icepack for her face, which she did, and she also cleaned her face and ear with a wet rag "to try to get some of the blood off[.]" *Id*.

[4]     Later, around the time that J.G. went to her bedroom to get ready for work, Herron gave her phone back to her. Using her phone, she took pictures of her face, which were admitted without objection into evidence. Herron drove J.G. to work because her vehicle would not start. Herron told her, "[T]ell everybody that you and your sister got into a fight, tell everybody that you wrecked your truck." *Id*. at 51. When she got to work, her boss, Timothy Chapman ("Chapman") immediately said, "[W]hat the f*ck happened to your face?" *Id.* at 51. She said, "Duane got me," and at Chapman's suggestion, J.G. called the police. South Bend Police Department Officer Alan Wiegand ("Officer Wiegand") responded to J.G.'s place of employment, where he met with her. J.G. was crying, and Officer Wiegand observed and took pictures of injuries to her face and neck.

[5]     Officers were dispatched to Herron's residence, and they ordered Herron to come out, but he did not. When police called him on his phone, he told officers that he was at another location, but after officers checked and determined he was not there, they returned to his house, and he eventually came out and was arrested. While in jail, Herron made telephone calls to J.G. trying to convince her not to testify against him, suggesting that she could testify that she could not remember what happened.

[6]     On January 12, 2015, the State charged Herron with Level 6 felony battery with moderate bodily injury and Class A misdemeanor interference with the reporting of a crime.[3] On April 11, 2016, Herron filed a motion for change of judge, which the trial court denied, and he filed a motion to reconsider, which was also denied. *Appellant's App. Vol. II* at 11, 165-76, 188-91. On June 28, 2016, Herron filed a motion to proceed *pro se*, and he asked the trial court to recuse herself. *Id*. at 151-52. After a hearing, the trial court granted Herron's request to proceed *pro se*, but maintained the public defender as stand-by counsel; it denied his request for recusal. *Id*. at 14.

[7]     At the November 2016 jury trial, the State appeared by counsel, and Herron appeared in person and with his stand-by counsel. Prior to the start of trial, Herron made an oral motion for the judge to recuse herself. Herron alleged the

---

[3] In March 2015, Herron pleaded guilty, but the trial court rejected that plea on May 28, 2015. On February 10, 2016, Herron requested to proceed *pro se*, which the trial court granted, and on March 1, 2016, he pleaded guilty as charged, but this plea was withdrawn on May 18, 2016, and his case was set for trial and a public defender was appointed at Herron's request.

following in support of his motion seeking recusal: (1) the trial court failed to remedy what Herron asserted was a violation of the rules of Professional Conduct by the prosecutor, based on an email letter that the prosecutor had sent to Herron's counsel with the terms and conditions of a plea offer, which Herron asserted included the use of some "false charges" as leverage; (2) the trial court had determined that probable cause existed for an obstruction of justice charge in another cause, No. 71D08-1507-F6-480 ("Cause 480"), and set bond at $50,000; Herron's conviction on that charge was overturned because the wrong subsection had been charged and the trial court had misinterpreted the obstruction of justice statute; (3) the trial court improperly denied Herron credit time at his sentencing on Cause 480 by ordering the sentence to run consecutive to a parole violation; (4) the trial court "duped" Herron into not filing a motion to correct error in Cause 480; and (5) Herron was intimidated from speaking at his sentencing in Cause 480 because, he claimed, a sheriff in the courtroom threatened Herron with a taser and told him to "shut up." *Tr. Vol. II* at 9-17.

[8] After hearing Herron's arguments, the trial court denied Herron's motion, finding as follows: Regarding the finding of probable cause and the credit time issue, Herron's allegations were merely adverse rulings. *Id*. at 22-23, 26. With regard to the motion to correct error, the record showed that the trial court had entered an order in favor of Herron, allowing him to file a belated motion, and had explained to Herron that he needed to let his appellate counsel know of his intention to file such a motion because it could affect the time allowed for filing an appeal. *Id*. at 22. As to the alleged threat by a sheriff, the trial court found

that, while it is common practice for security personnel to be in the courtroom, employing a taser is not the practice in her courtroom or any courtroom she has been in, that there has never been a circumstance where a taser has ever been necessary or threatened, and that if any such action occurred, it was not at her directive. *Id*. at 23. The trial court further found that its misinterpretation of the obstruction of justice statute, resulting in reversal on appeal, did not prejudice or bias the judge against Herron, and, rather, "it just furthers my education with regard to the law. And I appreciate that." *Id*. at 12, 24. The judge further stated that she had spoken with an attorney who works with the judicial qualifications commission about whether that situation warranted recusal, and that attorney advised that recusal was not appropriate or necessary. *Id*. at 21, 25-26. The trial court then denied Herron's request for recusal, and the matter proceeded to trial.

[9] During the jury trial, J.G. testified to the above sequence of events, where Herron held her down and beat her. She described that Herron was "smacking [her] as hard as he could," and that after he dragged her from the couch and to the floor and was straddling her, he hit her "over and over nonstop." *Id.* at 36-37. She "begged him to get off of [her]" because he was on her chest and she "couldn't breath[e]." *Id.* at 37. When she eventually made it to a chair, Herron told her to get an icepack for herself. She recalled that Herron was angry that her blood was on his clothes. J.G. testified that police came to her place of employment and later to her home. Pictures taken by police of J.G., both at work and later at her home, were admitted at trial. She described that her

bruising worsened in the following days, and that, as a result of the incident, she suffered pain and bruising that lasted for months, and ongoing issues with vertigo and hearing loss.

[10] Chapman testified that, when J.G. got to work, he observed that her face was swollen, and she was distraught. He described that she looked like "she had gotten beaten up kind of badly." *Id.* at 75. He testified that he "instructed her to go into the office and call the police[.]" *Id.* at 76. Chapman testified that J.G.'s face was swollen, she had a black eye, and "the cheek bone was pretty messed up." *Id.* He recalled that the injuries J.G. sustained were visible for three weeks "if not longer[.]" *Id.*

[11] Officer Wiegand testified that he responded to J.G.'s place of employment, and he observed that she was crying and had injuries to her face and neck. He testified that other officers were dispatched to Herron's home, but that he also went to Herron's residence after he had met with J.G., and he arrived as other officers were ordering Herron to exit the home. Officer Wiegand testified that he spoke briefly to Herron, who asked what charges he was facing. Officer Wiegand testified, "[S]o I advised him of what he was being charged with at that time. And he stated he hoped [J.G.] changed her mind and didn't press charges." *Id.* at 83-84.

[12] Herron testified in his defense, stating that, on the day in question, J.G. had been doing drugs and was shaking, and there was heroin in the house. He testified that when he took her drugs away from her, she attacked him and

came toward him with a knife, so he grabbed her, threw her to the ground and sat on her, until she let go of the knife. *Id.* at 104-05. He acknowledged that he had grabbed J.G.'s phone, but explained that he did not give it back to her for a period of time because he wanted to contact her drug dealer "to stop some of the things that were going on." *Id*. at 106. Herron testified that the altercation occurred because he believed his life was in danger, "and I just kind of reacted." *Id*. at 108. On cross-examination, counsel presented Herron with pictures taken by police of J.G.'s injuries, and Herron acknowledged that he caused the "main injury" to her eye. *Id*. at 109.

[13] The jury found Herron guilty of Level 6 felony battery with moderate injury and not guilty of Class A misdemeanor interference with reporting of a crime. The trial court imposed a sentence of two years, but suspended it and placed Herron on probation. *Appellant's App. Vol. II* at 21. Herron now appeals.

## Discussion and Decision

## I. Sufficiency of Evidence

[14] Herron argues that the evidence was insufficient to support his conviction for Level 6 felony battery with moderate injury. In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Burgh v. State*, 79 N.E.3d 955, 957 (Ind. Ct. App. 2017). We will affirm the judgment unless no reasonable factfinder could find the defendant guilty. *Id*. It is not necessary that the evidence overcome every

reasonable hypothesis of innocence. *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied*. "A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[15] To convict Herron of Level 6 felony battery as charged, the State was required to prove beyond a reasonable doubt that Herron knowingly or intentionally touched J.G. in a rude, insolent, or angry manner resulting in moderate bodily injury to J.G. Ind. Code § 35-42-2-1(b)(1), (d)(1); *Appellant's App. Vol. II* at 19. Moderate bodily injury means any impairment of physical condition that includes substantial pain. Ind. Code § 35-31.5-2-204.5.

[16] Herron asserts that "there were two distinct versions of how the injuries were incurred[,]" claiming that he told the jury "a consistent and believable story," whereas J.G.'s story was not believable and was "inconsistent with what the jury determined other evidence to be." *Appellant's Br.* at 8-9.

[17] We reject Herron's claims. It is well-settled that it is for the factfinder to decide which witnesses to believe. *Holeton v. State*, 853 N.E.2d 539, 541 (Ind. Ct. App. 2006). In this case, the jury chose to believe J.G., who testified that Herron started an argument with her and that he hit her in the face and head, dragged her to the ground, sat on top of her, and continued to hit her face and head. When he stopped, and she told him, "You could've killed me," Herron replied, "I was trying to." *Tr. Vol. II* at 38. Her shirt was ripped, an earring was pulled from her ear, her face and ear were red and bruised and bloodied. She testified

that she had pain for months and continued to suffer vertigo and hearing loss. *Id*. at 52. J.G.'s testimony was consistent with the testimony of Chapman and of Officer Wiegand, who observed her appearance and her distraught demeanor. She told each of them that Herron had caused her injuries. Herron admitted to causing injury to her eye. Herron's sufficiency argument is a request for us to reweigh the evidence on appeal, which we cannot do. *Palacios v. State*, 926 N.E.2d 1026, 1034 (Ind. Ct. App. 2010). The State presented sufficient evidence to convict Herron of Level 6 felony battery with moderate injury.

## II. Recusal

[18] Prior to the start of trial, Herron made an oral motion for the trial judge ("Judge Hurley") to recuse herself. He asserted a number of grounds in support, although on appeal Herron states that "[t]he primary reason had to do with [Herron] being found guilty in an Obstruction of Justice charge in [Cause 480,]" which the Court of Appeals later reversed, finding that Judge Hurley should have granted his motion for a directed verdict, but failed to do so because she had misinterpreted a subsection of the obstruction of justice statute. *Appellant's Br*. at 9. Herron's argument is that her error and the reversal, combined with his other allegations – relating to denial of jail time credit, allegedly being "duped" into not filing a motion to correct error, and "his treatment in her courtroom" by security who allegedly threatened to use a taser on Herron – created the appearance of bias. *Id*. at 10.

[19] A ruling upon a motion to recuse rests within the sound discretion of the trial judge and will be reversed only upon a showing of abuse of that discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Bloomington Magazine, Inc. v. Kiang*, 961 N.E.2d 61, 63 (Ind. Ct. App. 2012). As this court has explained,

> When reviewing a trial judge's decision not to disqualify herself, we presume that the trial judge is unbiased. In order to overcome that presumption, the appellant must demonstrate actual personal bias. In addition, the mere appearance of bias and partiality may require recusal if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality. Upon review of a judge's failure to recuse, we will assume that a judge would have complied with the obligation to recuse had there been any reasonable question concerning impartiality, unless we discern circumstances which support a contrary conclusion.

*Id*. at 64 (internal quotation and citations omitted).

[20] In support of his position, Herron refers us to Rule 1.2 of the Code of Judicial Conduct, providing that a "Judge shall act at all times in a manner that promotes public confidence in independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." He urges that the appearance of impropriety, including "the mere appearance of bias or partiality," may require recusal if an objective person, knowledgeable of all circumstances, would have a rational basis for doubting the judge's impartiality. *Id*. at 9-10 (citing to Rule 2.11 of the Code of Judicial Conduct, providing, in part, that "a judge is disqualified whenever the judge's impartiality

might reasonably be questioned[.]"). Herron argues that, in this case, "[w]hen all things are considered, a reasonable person could perceive [Judge Hurley] was biased and partial." *Id.* at 10. We reject Herron's claim.

As an initial matter, we observe that, other than making general allegations that Judge Hurley was biased or that an appearance of impropriety existed, Herron has not provided any specific evidence or explanation as to how or in what way Judge Hurley acted in a biased or partial way. Thus, his claim regarding recusal is waived for failure to support it with cogent reasoning. Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, we find no error in the trial court's denial of Herron's motion. "'Merely asserting bias and prejudice does not make it so. The law presumes that a judge is unbiased and unprejudiced.'" *In re Estate of Wheat*, 858 N.E.2d 175, 183 (Ind. Ct. App. 2006) (quoting *Smith v. State,* 770 N.E.2d 818, 823 (Ind. 2002)). To rebut that presumption, a defendant must establish from the judge's conduct actual bias and prejudice against the defendant that places him in jeopardy. *Smith,* 770 N.E.2d at 823. Such bias exists only where there is an undisputed claim or where the judge expressed an opinion on the merits of the pending controversy. *Id.* Adverse rulings by a trial judge from past proceedings with respect to a particular party are generally not sufficient reasons to believe the judge has a personal bias or prejudice. *Voss v. State*, 856 N.E.2d 1211, 1217 (Ind. 2006).

[23] Here, Herron provides no instance in which Judge Hurley expressed an opinion on the merits of the pending controversy, and he has not shown that her conduct evinced bias and prejudice that placed him in jeopardy. Herron's primary challenge relies on the fact that, in Cause 480, Judge Hurley had found that probable cause existed for an obstruction of justice charge, and his conviction on that charge was later overturned on appeal because the subsection under which the State had charged Herron was inapplicable to him. In its decision, the Court of Appeals found that the trial court erred when it denied his motion for a directed verdict on the obstruction of justice charge, having misinterpreted a subsection of the statute. *Herron v. State*, 61 N.E.2d 1246, 1250-51 (Ind. Ct. App. 2016). Upon receipt of the appellate opinion, Judge Hurley recognized the error and advised that she would remedy the situation, after the opinion was certified, by entering judgment of conviction only on the other three offenses for which Herron had been found guilty. *Tr. Vol. II* at 12-14, 24. As the State observes, "The mere fact that a trial judge has presided over a previous trial which resulted in a conviction and a subsequent reversal does not necessarily disqualify the judge from presiding over the retrial." *Appellee's Br*. at 14 (citing *Flowers v. State,* 738 N.E.2d 1051, 1060 (Ind. 2000)). In this case, Judge Hurley presided over, not a retrial, but a different set of criminal charges that Herron faced, and she consulted with the judicial qualifications commission, who advised her that recusal was not appropriate or necessary. *Tr. Vol. II* at 21, 25-26. We reject Herron's claim that Judge Hurley was necessarily and automatically prejudiced against him because, in another of

his criminal cases, the Court of Appeals had determined that Judge Hurley had misinterpreted a statute.

[24] We likewise find that his other claims in support of bias are unfounded. The record suggests that the trial court's determination of credit time in Cause 480, although adverse to Herron, was in accordance with the law, and even if it was not, and was an error, this does not equate to bias.[4] The record also does not support his claim that he was duped into not filing a motion to correct error; indeed, the record indicates that Judge Hurley entered an order reminding Herron that he had until April 23, 2016 to file a belated motion to correct error. *Appellant's App. Vol. II* at 177. Nor does the record support his claim that a sheriff's deputy threatened him with a taser: (1) The prosecutor stated that she did not witness any threatening of taser use; (2) Judge Hurley stated that she was not aware of any such action by the deputy, noting that it would not be the standard course of practice in her courtroom, and that if the deputy had acted in that manner, it was not at her directive or request; and (3) Herron admitted that he did not see the threatened taser use, but was "under the impression that . . . I was being threatened with a taser" because he heard a belt unbuckle. *Tr. Vol. II* at 16-17. His claim regarding the taser was, at best, speculative and failed to establish any bias or prejudice on the part of Judge Hurley. Given this record, we find that Herron has failed to meet his burden to show that Judge Hurley

---

[4] As the State observes, Herron did not appeal his sentence on the obstruction of justice conviction and thus has "implicitly conceded that [the sentencing] ruling did not rise to the level of reversible error[.]" *Appellee's Br.* at 16.

was biased or prejudiced against him.[5]  The trial court did not err when it denied Herron's motion asking for her recusal.

[25]    Affirmed.

[26]    Najam, J., and Brown, J., concur.

---

[5] We note that Herron does not make any argument on appeal concerning his assertion, made prior to trial, claiming that the trial court failed to remedy what Herron asserted was a violation of the rules of Professional Conduct by the prosecutor, related to the prosecutor's letter to Herron's counsel outlining the terms and conditions of a plea offer.  Herron has thus waived that argument.  Ind. Appellate Rule 46(A)(8)(a).