


FILED
Apr 01 2024, 9:13 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Martha Espinoza,

*Appellant-Plaintiff*

v.

St. Mary Medical Center, Inc.,

*Appellee-Defendant*

April 1, 2024

Court of Appeals Case No.
23A-CT-1204

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No.
45D01-1811-CT-831

**Opinion by Judge Weissmann**
Chief Judge Altice and Judge Kenworthy concur.

**Weissmann, Judge.**

[1] Martha Espinoza tripped and fell on two overlapped floor mats while accompanying her grandson to his appointment at St. Mary Medical Center. Espinoza filed a negligence claim against the Medical Center, arguing that it was liable for her injuries. At trial, the Medical Center obtained judgment on the evidence after Espinoza failed to prove during her case-in-chief that the Medical Center had actual or constructive knowledge of the hazard.

[2] Espinoza repeated her negligence claim in a motion to correct errors while also arguing that the trial judge should have recused himself because his son worked for the law firm representing the Medical Center. The trial court rejected Espinoza's motion in full by reiterating that judgment on the evidence was merited and ruling that disqualification was unwarranted. We affirm.

## Facts

[3] When Espinoza and her husband accompanied their grandson to an appointment at the Medical Center, a security guard personally led them to their destination inside the building. En route, Espinoza tripped over two overlapping floor mats, which tipped her body forward. Despite trying to grab nearby handholds for balance, Espinoza fell on her left leg.

[4] Several people came to assist Espinoza, and someone eventually placed her in a wheelchair. Espinoza then urged the security guard to continue leading the group to their destination so her grandson would not miss his appointment. It was not until she stood up at the appointment that Espinoza recognized the

pain in her left leg and requested to see a doctor. X-rays of Espinoza's left leg revealed that her upper tibia was broken.

[5] Espinoza filed a negligence claim against the Medical Center, asserting a premises liability theory. The case proceeded to a jury trial in March 2023, and during her case-in-chief, Espinoza elicited testimony from the eyewitnesses to the accident: herself, her husband, her grandson, and the security guard. Only the security guard testified to facts beyond Espinoza's fall, and those facts merely revealed that the hallway in which she fell was a "high traffic" area. Tr. Vol. II, p. 182.

[6] Further, Espinoza produced no evidence showing how often, or for how long, the Medical Center's floor mats overlapped; nor that anyone at the Medical Center knew they were overlapping at the time of Espinoza's fall. She also did not introduce any evidence of the Medical Center's procedures for dealing with hazardous conditions in the relevant area or if there was a history of similar accidents. After Espinoza rested her case-in-chief, the Medical Center moved for judgment on the evidence, arguing that Espinoza did not prove that it had actual or constructive knowledge of any hazard, an element of her premises liability claim.

[7] The trial court granted the Medical Center's motion, stating: "[T]here is nothing for the jury to determine as there is nothing presented that would, even minimally, suggest that [the Medical Center] had constructive knowledge of the overlapping carpets." Appellant's App. Vol. II, p. 17. Although Espinoza

challenged the court's conclusion in a motion to correct error, the court reiterated its belief that judgment on the evidence was proper.

[8] But Espinoza also raised a new claim in her motion. Asserting newly discovered evidence that the trial judge's son worked for the law firm representing the Medical Center, Espinoza alleged that the trial judge acted improperly by not recusing himself from the potential conflict of interest. The trial court rejected this argument. As the judge noted, his son had not worked on this case, was not a partner at the law firm with an economic interest in the outcome, and his employment at the law firm was public knowledge. The trial court thus concluded that no basis existed for its recusal.

## Discussion and Decision

[9] Espinoza's appeal arrives as a challenge to the trial court's denial of her motion to correct error. A ruling on a motion to correct error is generally reviewed for an abuse of discretion. *Berg v. Berge*, 170 N.E.3d 224, 227 (Ind. 2021). We will reverse only where "the trial court's judgment is clearly against the facts and circumstances before it or where the trial court errs on a matter of law." *Id.* (quoting *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013)). We review issues of law de novo. *Id.*

## I.    The Trial Court Properly Granted the Medical Center's Motion for Judgment on the Evidence

[10] A motion for judgment on the evidence under Trial Rule 50(A) tests the sufficiency of the evidence presented by the non-movant. *Purcell v. Old Nat.*

*Bank*, 972 N.E.2d 835, 839-40 (Ind. 2012). The motion should be granted "only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Id.* The evidence, and any reasonable inferences from it, are viewed in the light most favorable to the non-movant. *Id.*

Determining whether evidence is enough to survive a motion for judgment on the evidence "requires both a quantitative and a qualitative analysis." *Id.* at 840 (quoting *Am. Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 184 (Ind. 1983)). Evidence fails quantitatively only if it is wholly absent or missing. *Id.* If some evidence exists, the court must then determine whether the evidence is substantial enough to support a reasonable inference in favor of the non-moving party; in other words, whether the evidence is qualitative. *Id.* Evidence is not qualitative "when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because the intended inference may not be drawn therefrom without undue speculation." *Id.* (quoting *Am. Optical*, 457 N.E.2d at 184).

In Indiana, a premises liability claim is governed by the following framework:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Grifin v. Menard, Inc.*, 175 N.E.3d 811, 813 (Ind. 2021) (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991)). Espinoza was an invitee of the Medical Center. Thus, to prevail against the Medical Center's motion for judgment on the evidence, she must have presented, in part, substantial evidence that the Medical Center had actual or constructive knowledge of the alleged dangerous condition: the overlapping floor mats. She did not.

## A.    Actual Knowledge

Espinoza's evidence did not establish that the Medical Center had actual knowledge of the overlapping mats. The security guard's testimony was the only possible evidence of actual knowledge and his testimony explicitly established that he saw nothing. Accordingly, the only avenue for Espinoza's claim to succeed is if she provided substantial evidence of the Medical Center's constructive knowledge.

## B.    Constructive Knowledge

Constructive knowledge, in this context, refers to a "condition which has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz v. Kroger Co.*, 963 N.E.2d

1141, 1144 (Ind. Ct. App. 2012) (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992)). Espinoza did not make this showing.

[15]     Espinoza's evidence amounted to the fact that while she was accompanied by a security guard in a "high-traffic" hallway, she tripped and fell on two overlapping floor mats. Tr. Vol. II, p. 182. No eyewitness reported seeing the mats overlapping before Espinoza's fall, and three people had safely navigated the mats just before the fall. Evidence that the hazardous condition existed before Espinoza's fall, and that it existed long enough for the Medical Center to learn of the hazard, was required here as: "[f]alling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go." *Ogden Estate v. Decatur Cnty. Hosp.*, 509 N.E.2d 901, 903 (Ind. Ct. App. 1987).

[16]     Nor does the area being busy support constructive knowledge. If anything, it undercuts Espinoza's claim because, if the hallway is often busy and filled with people, there should be evidence about how long the floor mats had been overlapping or additional witnesses that could have testified to the existence of any hazardous condition. *See Kroger Co.*, 963 N.E.2d at 1145 (rejecting premises liability claim where the injury occurred in a busy area of the store because finding constructive knowledge would be like "imposing a strict liability standard or mandating an employee's presence in every aisle at all times").

[17]     Also noticeably absent from Espinoza's evidence is any reference to whether there was a history of falls from overlapping mats or in that part of the hallway in general. Espinoza also did not identify the Medical Center's policy, if there

was one, towards identifying hazardous conditions. *See Griffin v. Menard, Inc.*, 175 N.E.3d 811, 814 (Ind. 2021) (rejecting premises liability claim due to lack of constructive knowledge, but noting "the designated evidence does not include copies of the policies and practices at issue or an employee handbook" and that the Court "would be in a different situation" with more specific evidence).

[18] Because Espinoza did not present substantial evidence that the Medical Center had actual or constructive knowledge of the hazardous condition, we affirm the trial court's judgment on the evidence in favor of the Medical Center.

## II.  The Trial Judge Did Not Err in Refusing to Recuse

[19] Espinoza next argues that the trial judge erred in refusing to disqualify himself. She argues that the trial judge created the appearance of impropriety, and violated the Code of Judicial Conduct, by failing to disclose that his son worked for the law firm representing the Medical Center. "A judge's decision about whether to recuse is reviewed for an abuse of discretion." *L.G. v. S.L.*, 88 N.E.3d 1069, 1071 (Ind. 2018).

[20] Espinoza points to Indiana's Code of Judicial Conduct, which instructs a judge to "disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." Ind. Judicial Conduct Rule 2.11 cmt. 5. But even if the trial court should have disclosed his son's employment on the record, "no decision of this court or our

supreme court has granted relief solely on the basis of the Code's requirements absent an independent procedural vehicle for bringing the claim." *Barriger v. Brown Cnty. Bd. of Health*, -- N.E.3d --, 2024 WL 469224, *3 (Ind. Ct. App. Feb. 7, 2024) (quoting *Mathews v. State*, 64 N.E.3d 1250, 1255 (Ind. Ct. App. 2016)).

[21] Indiana Trial Rule 79(C) governs the disqualification or recusal of a judge and provides:

> A judge shall disqualify and recuse whenever the judge, the judge's spouse, a person within the third degree of relationship to either of them, the spouse of such a person, or a person residing in the judge's household:
>
> > (1) is a party to the proceeding, or an officer, director or trustee of a party;
> >
> > (2) is acting as a lawyer in the proceeding;
> >
> > (3) is known by the judge to have an interest that could be substantially affected by the proceeding; or
> >
> > (4) is associated with the pending litigation in such fashion as to require disqualification under the Code of Judicial Conduct or otherwise.

[22] Similarly, Indiana Judicial Conduct Rule 2.11 regulates the disqualification of judges and provides in part:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding

(2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner of such a person is:

> (a) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;

> (b) acting as a lawyer in the proceeding;

> (c) a person who has more than a de minimis* interest that could be substantially affected by the proceeding; or

> (d) likely to be a material witness in the proceeding.

(3) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding that could be substantially affected by the proceeding.

The fourth comment to Rule 2.11 clarifies that:

> [4] The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not itself disqualify the judge. If, however, the judge's impartiality might reasonably be questioned under paragraph (A), or the relative is known by the judge to have an interest in the law firm that could be substantially affected by the proceeding under paragraph (A)(2)(c), the judge's disqualification is required.

[23] In sum, these rules "may require recusal if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality." *L.G. v. S.L.*, 88 N.E.3d 1069, 1071-72 (Ind. 2018) (citing *Bloomington Magazine, Inc. v. Kiang*, 961 N.E.2d 61, 64 (Ind. Ct. App. 2012)).

In explaining why he did not disclose his son's employment with the Medical Center's law firm, the trial judge observed:

> The law firm representing the Medical Center has appeared in many cases, with many adverse rulings against its clients, before this judge. It was also a matter of public knowledge to the bar in Lake County, Indiana, as published in the Lake County Bar Association's Directory for the years 2020, 2021, and 2022, that the judge's son worked for the law firm representing the Medical Center. Although one of Espinoza's attorneys, as he testified in his Affidavit, was unaware of this employment relationship, his law firm's offices are located in Lake County, Indiana and does practice civil litigation.

> Moreover, although the judge's son was employed by the law firm, he did not appear as counsel in this case, he holds no equity interest in the firm and had no economic interest, as defined by Comment [6], in the outcome of Espinoza's lawsuit against the Medical Center.

Appellant's App. Vol. II, pp. 21-22 (cleaned up). There is no basis here for an objective observer, knowledgeable of all the circumstances, to conclude bias clouded the trial judge's decision.

First, as the trial judge noted, his son had no role or connection to this case. *See* Jud. Cond. R. 2.11 cmt. 4 (clarifying that recusal is not required, unless mandated by another rule, where a relative of the judge is affiliated with an involved law firm). Second, the judge's son also had no economic interest, as defined by the Judicial Code of Conduct, in this matter. *See* Jud. Cond. R. 2.11(A)(3); Jud. Cond. R. 2.11 cmt. 6 ("'Economic interest,' as set forth in the Terminology section, means ownership of more than a de minimis legal or

equitable interest."). Third, the son's employment was a matter of public record throughout this case; signifying no attempt to conceal this fact from Espinoza. Taken together, these facts create no rational basis for an objective observer to doubt the judge's impartiality. And to the extent that Espinoza's argument can be read as saying that the trial judge demonstrated its bias by ruling against her, we reject it in full. *See, e.g.*, *L.G.*, 88 N.E.3d at 1071 ("Adverse rulings and findings by a trial judge are not sufficient reason to believe the judge has a personal bias or prejudice.").

Accordingly, we find no abuse of the trial court's discretion in refusing to recuse.

## Conclusion

Because the trial court did not abuse its discretion in denying Espinoza's motion to correct error, we affirm.

Altice, C.J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Mark A. Psimos
Nathan M. Psimos
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Michael A. Sarafin
Susan K. Swing
Johnson & Bell, P.C.
Crown Point, Indiana